NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0672n.06
Filed: September 12, 2007

**No. 05-6170**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| SHELLY PERKINS, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

Before:   BATCHELDER and GRIFFIN, Circuit Judges; and ACKERMAN, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Shelly Perkins was charged with two counts of being a felon in possession of a firearm in violation of Title 18 U.S.C. § 922(g). Perkins pleaded not guilty and filed a motion to suppress the physical evidence and her statements during her arrest. Following a hearing, the district court denied Perkins' motion. At the conclusion of a jury trial, Perkins was convicted on both counts of the indictment. Thereafter, the district court sentenced her to 180 months' incarceration, to be followed by three years' supervised release, and a $200 special assessment. Perkins timely appealed.

For the reasons set forth below, we affirm Perkins' conviction and sentence.

_____

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

I.

On June 2, 2003, members of the Shelby County Narcotics Unit executed a search warrant at approximately 2:20 in the afternoon at 2998 Spottswood, a small residence in Memphis, Tennessee. Deputy Michael Bartlett testified that he obtained and executed the warrant. At the later suppression hearing, Bartlett testified that the dwelling was a small, three bedroom house, and that the officers approached it in a van. Bartlett stated that he, the first officer to the door, knocked upon the door and announced "Shelby County Sheriff's Narcotics Unit, search warrant." He did this approximately six times in order to wait thirty seconds. Although the deputies heard a commotion in the house, no one opened the door, and the deputies forced an entry by "pick[ing]" the iron door and ramming the wooden inside door.

Bartlett testified that upon entering the house, there were several people present, including Perkins. After handcuffing Perkins, Bartlett asked her if there were any illegal narcotics in the house. Perkins responded by stating that there was marijuana under her pillow and cocaine in her nightstand beside the bed. In seizing the marijuana and cocaine, the officers also found a revolver on the nightstand beside the bed. When Bartlett asked Perkins for her identification, Perkins stated that it was in her purse. Thereafter, Bartlett located the identification and discovered a second handgun in the purse. After being advised of her Miranda rights, Perkins admitted that the guns belonged to her.

Terrance Johnson also testified at Perkins' suppression hearing. Johnson testified that he was present at 2998 Spottswood when the search warrant was executed, but he did not recall the officers knocking at the door and announcing their entry.

At the conclusion of the suppression hearing, the district court issued an oral ruling from the bench. The district court found that the officers had a valid search warrant and arrived at the residence at 2:00 p.m. on June 2, 2003. The district court also evaluated the credibility of Bartlett's and Johnson's testimony, concluding that:

> in evaluating Mr. Johnson's testimony, and I'm not really crediting his testimony as to what happened on the knock and announce–but in evaluating his testimony, I am not particularly moved by whether he has a criminal history or not. . . . What troubled me is as I had the opportunity to sit here and listen to Mr. Johnson and observe him, I would say that Mr. Johnson's perceptions are not probably as clear as they need to be, and his memory is probably not as good as it ought to be for me to rely on it in opposition to the precise, clear testimony of Officer Bartlett. . . . Mr. Johnson was not in a position to remember very clearly his own criminal history, exactly what he did, and when he did it, and what his punishment was. And my observation is that his perception and his memory are both unreliable, even when he makes his best effort in good faith to testify. . . . [Thus,] his testimony for the Court is unreliable, based on listening to him try to answer questions, understand questions, and respond to questions, and trying to remember his own past, significant events in his own past, much less events from several years ago.

The district court stated that "insofar as there is a conflict in the testimony," it "would resolve the conflict in favor of the detective, Detective Bartlett."

At the trial, Special Agent Mike Roland from the Bureau of Alcohol, Tobacco, and Firearms testified regarding the firearms seized from Perkins' house. Specifically, he testified that he had examined the firearms, one of which was a Walther semi-automatic pistol manufactured in Germany, and the other was a Colt revolver manufactured in Connecticut. At the conclusion of the

government's case-in-chief, Perkins moved for judgment as a matter of law, arguing that the government failed to put forth sufficient evidence that the firearms had crossed state lines. The district court denied the motion.

Following the trial, a jury found Perkins guilty of both counts of possessing a firearm after being convicted of a felony. The district court sentenced Perkins as an Armed Career Criminal to 180 months' incarceration, followed by three years supervised release.

II.

First, Perkins argues that the district court erred in denying her motion to suppress because the district court "clearly erred in finding that the officers knocked and announced before entering the home" by failing to credit the testimony of Terrance Johnson. The government contends that the district court did not err in denying Perkins' motion to suppress, that the evidence established that Bartlett waited approximately thirty seconds prior to entry, and that this procedure satisfied the common law "knock and announce" rule's reasonableness inquiry.

On appeal from a denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo. *See United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003). "Absent exigent circumstances, the Fourth Amendment requires the police to knock and announce their presence before forcibly entering a location to execute a search warrant." *United States v. Pelayo-Landero*, 285 F.3d 491, 498 (6th Cir. 2002). Here, the district court did not err in finding that the knock-and-announce rule was satisfied when the officers waited thirty seconds prior to forcing entry into the home. The warrant was executed in the middle of the afternoon, the

officers heard a "commotion" in the house signaling the presence and activity of people, and the subject matter of the warrant (narcotics) had the potential to be easily destroyed. Perkins' only argument – that the district court erred in not crediting the testimony of Terrance Johnson over Officer Bartlett – is unsupported and without merit. Credibility determinations "are generally not subject to reversal upon appellate review." *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (en banc); *see also United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995) ("The appellate courts generally do not review the district court's determinations regarding witness credibility.").

Moreover, even if the officers had failed to comply with the knock-and-announce rule during the execution of the valid warrant, it is likely that Perkins would not be entitled to suppression of the evidence. The Supreme Court recently decided *Hudson v. Michigan*, — U.S. — , 126 S. Ct. 2159, 2168 (2006), holding that where police executing a valid search warrant failed to knock and announce their presence, a "[r]esort to the massive remedy of suppressing evidence of guilt is unjustified." *See also United States v. Johnson*, 488 F.3d 690, 696 (6th Cir. 2007).

Accordingly, we affirm the denial of defendant's motion to suppress.

### III.

Next, Perkins asserts that the evidence presented by the prosecution was insufficient to support the jury's verdict that Perkins possessed firearms in and affecting interstate commerce after being convicted of a felony. We disagree.

"When reviewing the sufficiency of the evidence to support a criminal conviction, the 'relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Wood*, 364 F.3d 704, 716 (6th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007).

Perkins contends that the government failed to present sufficient evidence with respect to the second and third elements of the crime. We disagree. The elements for conviction pursuant to 18 U.S.C. § 922(g)(1) are: (1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition; and (3) that the firearm traveled in or affected interstate commerce.

The second element, knowing possession, may be sustained by evidence of either actual or constructive possession. *United States v. Moreno*, 933 F.2d 362, 373 (6th Cir. 1991); *United States v. Wight*, 968 F.2d 1393 (1st Cir. 1992). "Presence alone " within the proximity of a gun does not "show the requisite knowledge, power, or intention to exercise control over" the gun to prove constructive possession, *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976), but "other incriminating evidence, coupled with presence . . . will serve to tip the scale in favor of sufficiency." *Id.* at 108; *see also United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc).

Here, the government presented evidence at trial that: (1) the guns were located in Perkins' bedroom – one in her purse, along with her identification and letters addressed to her, and one in her nightstand, the same nightstand upon which the officers had found a bag containing cocaine; and (2) Perkins admitted that the guns belonged to her. Although, in her brief, Perkins proffers an alternate

theory of innocence – that the guns were left by her brother, and upon finding them, she put them away from the children – this does not demonstrate that the evidence presented to the jury was insufficient. Perkins testified as to her version of the facts at trial. Apparently, the jury did not believe her. "A jury may choose from among reasonable constructions of the evidence . . . and need not exclude every reasonable hypothesis except that of guilt." *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994). Perkins cannot meet her burden of demonstrating that no reasonable trier of fact could have found that the elements of the crime had been established beyond a reasonable doubt by simply offering an alternative explanation that was rejected by the jury. The burden is much higher, and Perkins has not met it.

Perkins' challenge to the sufficiency of interstate commerce evidence, the third element, is equally without merit. In *Scarborough v. United States*, 431 U.S. 563 (1977), the Supreme Court held that only a minimal nexus was needed to establish that a firearm affected interstate commerce. Indeed, the Court has held that the mere fact that the firearm was manufactured in a different state established a sufficient nexus with interstate commerce. *Barrett v. United States*, 423 U.S. 212 (1976). Here, contrary to Perkins' arguments, Agent Roland testified at trial where each of the firearms were manufactured. Further, he testified that the firearms were not manufactured in Tennessee. Based on this evidence, viewed in the light most favorable to the prosecution, a rational trier of fact could find that the firearms traveled in interstate commerce. Accordingly, we hold that the government presented sufficient evidence to meet its burden under 18 U.S.C. § 922 to show that the firearm affected interstate commerce.

IV.

Next, Perkins argues that her three previous drug convictions should not have been treated as separate episodes pursuant to the Armed Career Criminal Act ("ACCA").

Whether previous conduct constitutes numerous predicate offenses or a single occasion pursuant to the ACCA is a legal issue subject to de novo review. *United States v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995). The ACCA imposes a mandatory minimum sentence of fifteen years for career criminals. The statute provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*, such person shall be fined under this title and imprisoned not less than fifteen years. . . .

18 U.S.C. § 924(e)(1) (emphasis added).

"This circuit has further explained that a career offender is one convicted of three criminal 'episodes.' 'An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration.'" *United States v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995) (quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991)).

Perkins argues that because her predicate offenses were the result of a single arrest, a single court proceeding, and resulted in concurrent sentences, the district court erred by ruling that her predicate offenses were "committed on occasions different from one another." In response, the government persuasively relies upon *United States v. Roach*, 958 F.2d 679 (6th Cir. 1992), in which we addressed a similar situation and examined whether a defendant's three prior drug convictions

- 8 -

were part of a single criminal episode under the ACCA. Roach contended that his three prior drug convictions were part of a single criminal episode because they stemmed from the same indictment, were pled to on the same date, and two of them resulted from sales to the same undercover agent. *Id.* at 683. In addressing Roach's claims, we followed *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991), wherein the defendant made a similar argument that the drug raids resulting in his conviction for conspiracy constituted a single criminal episode because, although they occurred on different days, they occurred at the same residence and involved the same type of controlled substances. *Roach*, 958 F.2d at 684 (citing *Hughes*, 924 F.2d at 1361). In *Hughes*, we ultimately rejected this argument, holding that the drug raids occurred at distinct times during a nine-month period, and thus constituted three separate predicate offenses warranting enhancement under § 924(e)(1). *Id.* Likewise in *Roach*, we held that because Roach "committed drug offenses on three different days (March 11th, 12th, and 26th), these offenses do not constitute a single criminal episode, and the district court properly enhanced appellant's sentence pursuant to 18 U.S.C. § 924(e)(1)." *Roach*, 958 F.2d at 684.

In the present case, Perkins committed drug offenses on August 25, August 31, and October 2 of 1990, a span of 39 days, significantly more days than in *Roach*. In light of *Roach*, Perkins' arguments are without merit.

V.

Finally, Perkins contends that her Sixth Amendment rights were violated by the application of the ACCA because her prior convictions were not proved to a jury beyond a reasonable doubt.

This argument is foreclosed by *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005) (holding that a district court's characterization of a prior conviction as a "violent felony" as defined by the ACCA did not violate a defendant's Sixth Amendment rights under *United States v. Booker*, 543 U.S. 220 (2005)). *See also James v. United States*, – U.S. – , 127 S. Ct. 1586, 1600 (2007) ("To the extent that [defendant] contends that the simple fact of his prior conviction was required to be found by a jury, his position is baseless. . . . [W]e have held that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes."); *United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005).

## VI.

For the foregoing reasons, we affirm Perkins' conviction and sentence.