POSNER, Circuit Judge,
dissenting.
The defendant, convicted by a jury of multiple violations of wire fraud and related financial offenses, see 15 U.S.C. §§ 78j(b), 78ff(a), and 18 U.S.C. §§ 1343, 1957, was sentenced to 57 months in prison to be followed by three years of supervised release, and to pay $293,171.84 in restitution. But because the district judge committed serious errors in the defendant’s criminal trial, we should vacate the defendant’s conviction and order a new trial.
He had started an investment company, called JCL & Company, Inc., in 2008. He claims that his business plan, put into effect at the beginning of the following year, was to borrow money from investors (a minimum of $25,000 per investor) and invest the borrowed money in businesses in the hope that the investments would yield sufficient profits to compensate the investors generously for lending money to his company, as well as yielding profits for himself.
His business plan began to falter in 2011; he failed to make the investments that he’d promised his investors—instead *583 mostly putting money in his wife’s consulting fern—and is accused by the government of having forged signatures on the promissory notes that he received from the investors, in particular one named Danny Cole. Cole told one of the government investigators that his apparent signature on one of the promissory notes was a fraud, because it omitted his middle initial—and he said he never omits his middle initial in writing his name. Yet at trial he testified without contradiction that he’d verbally authorized the defendant to sign the promissory note in question. It is not forgery to copy a person’s name spelled as dictated by the person. Cole’s omission of this crucial detail during the government’s investigation suggests that Cole was at best not a reliable witness and, much worse, may have intentionally deceived the government into thinking that Lopez had committed more serious crimes than Lopez had committed. Despite the significance of Cole’s omissions, the judge unaccountably barred the investigator from testifying about Cole’s misstatements in order to undermine his credibility further. That was error by the judge. United States v. Lashmett, 965 F.2d 179, 182 (7th Cir. 1992).
The defense presented an expert witness at trial, Michael Alerding, whom the judge allowed to testify—but not as an expert witness. Yet Alerding, the defense pointed out at the trial without contradiction, is a certified public accountant with 43 years of experience in auditing and accounting and 25 years as a consultant and expert witness in litigation involving his specialties, which encompass the present case; and he was prepared to testify that the defendant’s business was basically sound. The judge, however, has a rule that an expert witness is not to be called an expert in front of the jury, lest the jurors be awed and think the witness infallible. Our court has not considered this rule as yet, but it has been accepted by other courts, see United States v. Johnson, 488 F.3d 690, 697 (6th Cir. 2007); United States v. Bartley, 855 F.2d 547, 552 (8th Cir. 1988), and the ABA likewise recommends that trial courts not endorse witnesses as “experts.” American Bar Association, Civil Trial Practice Standards (August 2007), 29.
But the judge confused her rule about calling Alerding an “expert” in the presence of the jury with the question whether he could testify as an expert at all under governing Rule 702 of the Federal Rules of Evidence, which provides that a “witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.” As a result of this confusion the judge permitted Alerding to give only lay testimony and prevented him from discussing, typical small businesses (which he wanted to compare to the defendant’s business) on the ground that by doing so he would be straying into “expert witness” territory. By substituting its muddled admissibility standard for the Rule 702 framework set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the district court again erred.
A government agent named Janet De-Lancey testified that payments made by the defendant to the investors in his business were “lulling payments,” that is, payments designed to lull the investors into thinking they were receiving the money to which they were entitled, when they were not. But they were; the defendant’s firm *584 was contractually obligated to make the payments to its investors. The district judge had acknowledged before trial that terming a payment a “lulling payment” was “argumentative and ha[d] the potential to prejudicially influence the jury” if used in summary evidence. But inconsistently, at the trial she permitted DeLancey to repeat her fraud accusation more than a dozen times. Agent DeLancey, a lay summary witness, should not have been permitted to offer such opinion testimony. The conclusion regarding intent was the jury’s to make. United States v. Marzano, 537 F.2d 257, 268 (7th Cir. 1976).
The judge’s worst mistake, however, was to allow the government in closing- argument to compare the defendant to Bernard Madoff. It was like comparing Judge Pratt to Pontius Pilate. The defendant does not challenge the amount of restitution that he was ordered to pay to those investors whom he had defrauded: $293,171.84; but the infamous Madoff is estimated to have defrauded his investors of between $12 billion and $20 billion (see his Wikipedia entry, https://en.wikipedia.org/wiki/ Bernard JV[adoff#size_of_loss_to_ investors). At $12 billion that is 40,000 times the fraud committed by Lopez; at $20 billion it is more than 68,000 times Lopez’s fraud. There is no comparison; it’s no surprise that Madoff was sentenced to 150 years [i.e., life] in prison, compared to the 57 months of prison to which our defendant was sentenced. The only purpose and effect of bringing Madoff into the picture in this case were to exaggerate the defendant’s crime. That was disreputable conduct by the Justice Department.
The defendant’s convictions should be vacated and the case remanded for a new trial.