**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0163n.06

No. 19-5391

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Mar 18, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| SCHILO W. CANTRELL, aka Shilo W. | ) | KENTUCKY |
| Cantrell, | ) |  |
|  | ) |  |
| Defendant-Appellant. | ) |  |

BEFORE: MERRITT, MOORE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. When a police officer attempted to pull over the vehicle in which Schilo Wayne Cantrell was riding, the driver attempted to elude the officer and, after the vehicle finally came to a stop, Cantrell attempted to flee on foot. In the vehicle? Both drugs and a gun. A jury convicted Cantrell of two drug-trafficking crimes and two firearm-related crimes, and the district court sentenced him to a below-guidelines sentence of 352 months. On appeal, we consider whether sufficient evidence supported three of Cantrell's convictions, whether the district court properly admitted a police officer's opinion about the drug conspiracy, and whether Cantrell's sentence is procedurally and substantively reasonable. Finding no error, we affirm.

I

On March 16, 2018, Joshua Ison, a Morehead, Kentucky police officer, responded to a 911 call reporting that a man armed with a handgun was threatening a woman at a Days Inn motel. The caller described a black Lincoln Navigator that had left the scene. En route to the Days Inn, Ison noticed the Lincoln Navigator driving away, so he began to follow it with lights flashing. The Navigator immediately accelerated and attempted to outrun Ison's patrol car, but the car chase soon ended when the Navigator approached a dead end in a parking lot.

Near the end of that chase, but before the Navigator had completely stopped, Cantrell opened the rear driver-side door and hung his foot out of the vehicle as if preparing to run. Once the Navigator stopped, Cantrell immediately exited and attempted to flee. Ison drew his gun, saying: "Police. Stop. Show me your hands. Get on the ground." Cantrell hesitated, then jumped back into the Navigator. Ison could partially see him rummaging around inside the vehicle. Cantrell and the Navigator's two other occupants exited the vehicle and, after additional officers arrived, were taken into custody. Ison approached the Navigator to ensure that nobody else was inside. He saw a pistol box in the front, many small ziplock bags inside a "woman's satchel" on the backseat floor, and drug paraphernalia in the center console.

Ison spoke with the Navigator's occupants. Cantrell admitted to arguing with a woman at the Days Inn but denied using a gun. The other two arrestees—Mark Lockwood, the Navigator's owner and driver, and Jessica DeBarr, the front-seat passenger—told the same story. All three denied that the Navigator contained drugs or anything else illegal. Ison found evidence suggesting otherwise: Lockwood had several hundred dollars and two small bags containing a crystal substance that appeared to be methamphetamine on his person, Cantrell had a syringe on his person, and both Cantrell and DeBarr appeared to be under the influence of drugs.

Armed with this information, Ison obtained a warrant to search the Navigator. He found the following items stuffed inside a gap between the back seats where Cantrell had been sitting: a Taurus 9-millimeter handgun with a chambered round and a full or nearly full magazine, a crystal substance that appeared to be methamphetamine, and a powdery substance that appeared to be heroin, fentanyl, or cocaine. Ison also found on the back-seat floor a McDonald's bag with "a very large quantity" of what looked like methamphetamine inside, a large set of digital scales, a box containing more small ziplock bags, two smaller sets of digital scales, and a plastic-wrapped package containing yet more apparent methamphetamine.

Ison next obtained a warrant to search the adjoining motel rooms (Rooms 201 and 202) at the Days Inn where Cantrell and the others had been staying. Room 201 contained nothing incriminating, but Room 202 contained needles, syringes, and a small plastic bag containing what looked like more methamphetamine.

The United States indicted Cantrell, DeBarr, and Lockwood. It charged Cantrell with conspiring to distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine (or aiding and abetting the others in doing so), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2); possessing a firearm in furtherance of one or both of these drug-trafficking crimes, in violation of 18 U.S.C. § 924(c)(1) (Count 3); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 4).

The government presented testimony from Officer Ison and three other witnesses at trial. The first of these witnesses, a forensic analyst at the Kentucky State Police crime lab, testified that she tested two of the substances seized from the Navigator's backseat area. One substance weighed

about 7.75 grams and contained methamphetamine; the other weighed about 150 grams and also contained methamphetamine.

The second witness, one of Cantrell's distant relatives, testified that she bought a Taurus 9-millimeter handgun for a cheap price at a pawn shop in March 2018. A few days later she visited Cantrell at the Days Inn, where he was then staying. Cantrell offered to buy the handgun from her for about $100 more than she had paid for it, so she sold him the gun. She identified the handgun found in the Navigator as the one she had sold to Cantrell.

The third witness was Matthew Dawkins, a police officer with nearly eight years' experience on the Drug Enforcement Agency Task Force in Lexington, Kentucky. Dawkins explained how drug-trafficking rings operate. He noted that traffickers make more money when they divide large quantities of drugs into single-use doses of a gram or half a gram, that they commonly use digital scales to prepare the smaller doses, and that they often package the doses in "small little ziplock bags." Dawkins opined that a typical drug user might carry a gram or two, but anyone carrying "30 grams, 40 grams, 50 grams" or more is "usually trafficking." He also testified that traffickers frequently use firearms—most often small handguns that are ready to fire—to protect their money and drugs. And he added that traffickers often work out of connected (or at least adjoining) motel rooms, "one room to sell dope, one room to cut it up and work." Dawkins concluded that "everything about this case leans towards trafficking in narcotics."

The jury convicted Cantrell on all counts. Cantrell's guidelines range was 360 months to life for Counts 1 and 2 (the drug-trafficking counts) and 120 months for Count 4 (the felon-in-possession count). These sentences could run concurrently with each other. But 18 U.S.C. § 924(c) required an additional consecutive sentence of 60 months for Count 3 (possessing a firearm in furtherance of a drug-trafficking offense), which raised Cantrell's final guidelines range to

4

420 months to life. The district court varied significantly downward. It sentenced Cantrell to 352 months in prison followed by eight years of supervised release.

## II

Cantrell raises two arguments attacking his conviction and two attacking his sentence.

## A

Cantrell first challenges the sufficiency of the evidence supporting his two drug convictions (Counts 1 and 2) and his conviction for possessing a firearm in furtherance of a drug-trafficking offense (Count 3). (He concedes that sufficient evidence supported his felon-in-possession conviction charged in Count 4.) Cantrell bears a "very heavy burden" to succeed on this type of challenge. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014) (citation omitted). "Criminal defendants have a due-process right not to be convicted of a crime 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which they are charged.'" *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)) (alteration omitted). But courts defer to the jury's finding of guilt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The question is not whether *we* are persuaded that a defendant is guilty. *Id.* Rather, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Cantrell cannot make this showing.

Start with Cantrell's drug convictions. For the government to prove the drug-conspiracy count (Count 1), many of our cases say that it needed to establish three elements: "(1) an agreement to violate drug laws, in this case 21 U.S.C. § 841; (2) [Cantrell's] knowledge and intent to join the conspiracy; and (3) [his] participation in the conspiracy." *E.g.*, *United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010). Yet the jury instructions in this case, following our model jury

instructions, identified only two elements for the government to prove: (1) two or more persons agreed to distribute drugs and (2) Cantrell knowingly and voluntarily joined the conspiracy. We have explained that merely a "semantic difference" divides these separate tests because our caselaw's participation element requires only that a defendant join the conspiracy. *See United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). To prove an agreement, moreover, the government did not need to "prove the existence of a formal or express agreement among the conspirators"; "a tacit or mutual understanding among the conspirators is sufficient." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). And "once the existence [of] a conspiracy is shown, the evidence linking an individual to that conspiracy need only be slight." *United States v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006).

To establish the drug-possession count (Count 2), the government needed to prove that Cantrell "(1) knowingly or intentionally (2) possessed a controlled substance (3) with intent to distribute." *United States v. Hampton*, 769 F. App'x 308, 310 (6th Cir. 2019) (citing *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006); *United States v. Monger*, 185 F.3d 574, 576 n.2 (6th Cir. 1999)). Possession need not be "actual"; "constructive" or "joint" possession suffices. *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006). And the government alternatively charged Cantrell with aiding and abetting DeBarr and Lockwood in their possession of drugs with an intent to distribute. To establish this aiding-and-abetting liability, the government could alternatively show that Cantrell "knew that [Debarr and Lockwood] possessed more than 50 grams of [methamphetamine] with the intent to distribute it, and that [he] assisted in their plan to deliver the" drugs. *Id.* This theory would not require the government to "prove that [Cantrell] actually or constructively possessed" the methamphetamine. *Id.*

The government presented sufficient evidence to support the elements for both of these drug convictions. The evidence showed that the Lincoln Navigator contained a loaded gun, large quantities of drugs that indicated trafficking rather than individual use, three sets of digital scales, and large quantities of small ziplock bags of the kind drug traffickers often use to package drugs for individual use. The evidence also showed that Lockwood had rented adjoining rooms in a motel close to the interstate, a setup that Officer Dawkins testified was consistent with drug trafficking, and that one of those rooms also contained drugs and drug paraphernalia. This evidence would allow a rational juror to conclude generally that two or more people had agreed to distribute drugs.

From there, a rational juror could also conclude specifically that Cantrell knew about and intentionally joined this drug-trafficking conspiracy. Cantrell's relative placed him at the Days Inn a day or two before his arrest. Cantrell had illegally purchased a firearm of the type that drug traffickers often use to protect their drugs. And police later found Cantrell in the Lincoln Navigator sitting next to that firearm and substantial drugs and drug paraphernalia, some of which was in plain view. Cantrell also immediately attempted to flee once Officer Ison stopped the Navigator. This evidence would allow a rational juror to link Cantrell to the drug-trafficking conspiracy. It would likewise allow a rational juror to believe that Cantrell knowingly possessed a controlled substance with intent to distribute it, or at least that he intentionally assisted the others in doing so.

Turn to Cantrell's firearm conviction for violating 18 U.S.C. § 924(c)(1) (Count 3). The government needed to prove that Cantrell possessed a firearm "in furtherance of" one or both drug-trafficking crimes. *See United States v. Ham*, 628 F.3d 801, 808–09 (6th Cir. 2011); *United States v. Mackey*, 265 F.3d 457, 460–62 (6th Cir. 2001). The in-furtherance-of element required a "specific nexus between the gun and the [drug-trafficking] crime[s] charged." *Ham*, 628 F.3d at 808

7

(quoting *Mackey*, 265 F.3d at 462). The government could show that nexus, for example, if the firearm "was strategically located so that it [was] quickly and easily available for use." *Id.* (quoting *Mackey*, 265 F.3d at 462). Our cases also identify several other factors to consider when evaluating whether a sufficient nexus existed between the drugs and the firearm, including "whether the gun was loaded," "the type of weapon," and "the legality of its possession." *Id.* at 808–09 (citation omitted); *see United States v. Shaffer*, 781 F. App'x 404, 415 (6th Cir. 2019).

Sufficient evidence supported the required elements. Cantrell does not dispute that he possessed a firearm. And a rational juror could have believed that Cantrell did so "in furtherance of" the drug-trafficking crimes. 18 U.S.C. § 924(c)(1). Officer Ison found the firearm strategically located next to where Cantrell had been sitting in the Navigator, "touching" or else "really close" to drugs and within arms' reach of the rest of the drugs in the vehicle. The firearm was ready to use with one round in the chamber and a full or nearly full magazine; it was a type of firearm drug traffickers often use to protect their drugs; and Cantrell could not legally possess it.

Cantrell's responses fall short. For his two drug counts, he argues that the evidence would allow a rational juror to conclude that he was only "a homeless addict who happened to have a firearm," not a drug trafficker, given that he was found under the influence of drugs and with a syringe in his pocket. But a rational juror could conclude that drug use and drug trafficking are not mutually exclusive. Consider the evidence: The jury heard testimony that "[i]t's not uncommon" for drug users to traffic; "a lot of times, that's how people get paid"—"in dope." Or consider our cases: That an individual "may have been a user," we have held, does not foreclose the possibility that the individual was a trafficker too, especially when the police found the individual next to large amounts of drugs, small baggies, scales, and a loaded firearm. *Hampton*, 769 F. App'x at 310–11.

For the firearm count, Cantrell argues that someone who uses a firearm "in furtherance of" a drug-trafficking crime would opt for "an assault rifle," not the "small" "9 millimeter handgun" that he possessed. A rational juror could conclude otherwise. Consider the evidence again: The jury heard testimony that the "majority" of firearms used in drug-trafficking crimes are in fact "small handguns" that "can be concealed easily." And consider our cases again: We have rejected similar sufficiency challenges to convictions involving similarly small handguns. *E.g.*, *Ham*, 628 F.3d at 809.

B

Cantrell next challenges the district court's decision to admit Officer Dawkins's testimony that the evidence "leans toward trafficking in narcotics." His claim faces an immediate procedural hurdle: We must review it for plain error because Cantrell did not object to this testimony. *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007). "We may reverse for plain error 'only in exceptional circumstances and only where the error is so plain that the trial judge . . . [was] derelict in countenancing it.'" *United States v. Ramamoorthy*, 949 F.3d 955, 960 (6th Cir. 2020) (citation omitted).

The district court made no obvious error. Under Federal Rule of Evidence 702, "a person with 'specialized knowledge' qualified by his or her 'knowledge, skill, experience, training, or education' may give opinion testimony if it 'will assist the trier of fact to understand the evidence or determine a fact in issue.'" *Johnson*, 488 F.3d at 698 (quoting Fed. R. Evid. 702). "Courts generally have permitted police officers to testify as experts regarding drug trafficking as long as their testimony is relevant and reliable." *Id.* Courts may permit the testimony even if it "embraces an ultimate issue to be decided by the trier of fact." *Id.* at 699 (quoting Fed. R. Evid. 704(a)).

Officer Dawkins testified that he had worked on a drug task force for nearly eight years investigating various types of drug-trafficking cases, including "cases like this one." He said that his work included "surveillance of individuals, search warrants of vehicles, residences, [and] storage units, collecting evidence and everything." The drug-trafficking cases he was most familiar with involved cocaine, fentanyl, and methamphetamine. With that foundation, Dawkins opined about common characteristics of drug-trafficking conspiracies and how different aspects of this case compared to other cases he had investigated. At least when considered under plain-error review, our cases have allowed this type of expert testimony because it "assist[s] the jury to understand the evidence" by explaining "what [the expert] saw and what it meant to him as viewed through the lens of his expertise." *Id.*; *see, e.g.*, *United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001).

Nor did the district court commit plain error in admitting Dawkins's statement that the evidence "lean[ed] toward trafficking." In *Johnson*, for example, we held that an officer's "opinion that what he saw amounted to a drug transaction was sufficiently helpful and insufficiently intrusive so as not to plainly cross the line into impermissible opinion evidence." *Johnson*, 488 F.3d at 699. The same result must follow in this case too.

C

Cantrell next argues that his below-guidelines 352-month sentence is procedurally unreasonable. That is so, he says, because the district court failed to provide a "thorough discussion of the 18 U.S.C. § 3553(a) factors and the weight given to each factor." Apt. Br. 29. Yet when the court asked his counsel if he had any objections to the chosen sentence, counsel responded: "I have none, Your Honor. I appreciate the variances you've given." We thus review his claim for plain

error because he failed to raise this alleged procedural error in the district court when given the opportunity to do so. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).

The district court did not commit plain error in its sentencing. "The law leaves much" to a district court's "own professional judgment" about how much explanation to give during sentencing: "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Rita v. United States*, 551 U.S. 338, 356–57 (2007). And there is "a sizeable gap between good sentencing practices and reversibly bad sentencing practices." *Vonner*, 516 F.3d at 389. In this case, as in others, "[w]hether the court's brief explanation for this sentence sufficed or not, any potential error was not 'plain.'" *United States v. Aguilar-Andres*, 780 F. App'x 231, 234 (6th Cir. 2019) (quoting *Vonner*, 516 F.3d at 387).

As a general matter, while the court's "explanation was short and did not mention § 3553," "we can map the district court's reasoning onto the § 3553(a) factors." *Id.* at 235. It recognized that the Sentencing Guidelines call "for a long prison sentence" when a career offender has been convicted of possessing a firearm in furtherance of a drug crime. *See* 18 U.S.C. § 3553(a)(4). That guidelines range in this case was 420 months to life imprisonment. Yet, when considering the "nature and circumstances of the offense," *id.* § 3553(a)(1), the court found that Cantrell had a minor role based on his homelessness and lack of funds. Those factors, in the district court's view, called for a downward variance. The variance, though, could not go too far because Cantrell had a significant criminal "history." *Id.*

As a specific matter, the court responded to Cantrell's two main arguments for a downward variance. *First*, Cantrell's counsel emphasized the "very significant" length of his guidelines range and argued that such a long sentence would "take away almost any hope from any man" and lessen any incentive "to do as well as [he could] while incarcerated[.]" The court agreed that the

Sentencing Guidelines suggested a very long sentence, which is precisely why it varied downward. But it also explained why a long sentence was still necessary: This was Cantrell's "third drug trafficking conviction." He also had "a history of violating conditions of release and not reporting." Between the two, "there's a lot here that is negative. 100 percent, I have to kind of dig to find something here that is positive."

*Second*, Cantrell highlighted his life-long addiction to drugs and argued that the evidence showed only an addict hoping to exchange a firearm for drugs, not a drug trafficker serving "as some type of a guard" "to embolden Mr. Lockwood in his endeavors." The district court responded that the jury's verdict foreclosed this argument. The jury convicted Cantrell of all four crimes, meaning it must have "believed beyond a reasonable doubt" that he was part of the drug-trafficking conspiracy. "He denies that, but the jury convicted him of that." Yet again, the district court agreed that Cantrell "had a minor role in the offense" and therefore granted him a downward variance.

All told, the court's sentencing was sufficiently thorough to withstand plain-error review. Cantrell offers no procedural basis to upend it.

D

Cantrell thus turns to substantive reasonableness. A substantive-reasonableness claim, at its core, asserts that a sentence is "too long" because of an improper weighing of the § 3553(a) factors. *United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019) (citation omitted). We review this type of challenge for an abuse of discretion, and presume on appeal that sentences falling within a properly calculated guidelines range are reasonable. *Id.* "This 'presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to

12

the proper sentence in the particular case." *Id.* (quoting *Rita*, 551 U.S. at 347). Not only that, where, as here, "a judge departs downward from the Guidelines range, 'simple logic compels the conclusion' that a 'defendant's task of persuading us that the more lenient sentence . . . is unreasonably long is even more demanding.'" *Id.* (citation omitted).

Cantrell concedes all of this, but argues that "the district court's already lenient sentence was not lenient enough." *Id.* He re-raises his argument that he was "a homeless addict who happened to have a firearm," not a drug trafficker, and says that if the district court had accepted his argument it would have varied even further downward than it did. This analysis does not satisfy the "demanding" burden of persuading us that the district court abused its discretion with its below-guidelines sentence. *See id.* As the district court explained, "the jury, in fact, convicted" Cantrell of the two drug-trafficking crimes and the related firearm crime, so the district court was required to impose a sentence for those crimes. And the court nevertheless *did* consider Cantrell's argument about why that sentence should be lower than the Sentencing Guidelines suggested, agreed with him that his role in the drug-trafficking conspiracy was "minor," and ultimately granted a 68-month downward variance. But again, it chose not to vary even further downward because, among other things, Cantrell had "a significant criminal history" and this was "his third drug trafficking conviction." Whether or not we would have granted Cantrell a greater downward variance, the same downward variance, or none at all, Cantrell has fallen short of showing that the district court abused its discretion with this sentence.

We affirm Cantrell's convictions and sentence.