[Cite as *State v. Williams*, 2018-Ohio-1647.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27663 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-4051 |
| | : | |
| BRYSON WILLIAMS | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the day of 27th day of April, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

TRAVIS KANE, Atty. Reg. No. 0088191, 1015 E. Centerville Station Road, Centerville, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Bryson Williams appeals from his conviction and sentence on one count of

murder (proximate result of felonious assault) with a firearm specification and one count of discharging a firearm on or near prohibited premises.[1]

{¶ 2} Williams advances three assignments of error. First, he challenges the weight of the evidence to sustain his convictions. Second, he alleges ineffective assistance of trial counsel. Third, he claims the trial court erred in failing to merge the murder and discharging-a-firearm offenses as allied offenses of similar import.

{¶ 3} The charges against Williams stemmed from the shooting death Terion Dixon on the afternoon of November 11, 2016. At trial, the State presented evidence that Williams had fired shots across a road toward a store where numerous people were standing outside. One of the shots struck and killed Dixon. The State's evidence included eyewitness testimony, statements Williams made in telephone calls after the shooting, and other corroborating information obtained during a police investigation. In his defense, Williams called a witness who had been outside the store during the shooting and who had identified someone else as the shooter when reviewing a photospread. Williams also called a witness who had been in the vicinity of the shooting but had not seen who fired the shots. Based on the evidence presented, a jury found Williams guilty of the charges against him. After merging several counts as allied offenses, the trial court imposed prison terms of fifteen years to life for murder, three years for the firearm specification, and eight years for discharging a firearm on or near prohibited premises. The trial court ordered these sentences to be served consecutively, resulting in an aggregate prison sentence of twenty-six years to life.

---

[1] Williams also was found guilty of several other offenses that merged into those set forth above for purposes of sentencing.

{¶ 4} In his first assignment of error, Williams contends his convictions are against the manifest weight of the evidence. In support, he challenges eyewitness Samuel Barker's identification of him as the shooter. He notes Barker's admission to drinking alcohol, smoking marijuana, and not eating prior to the incident. Under these circumstances, Williams claims Barker's identification was not reliable. He also notes that eyewitness Colleen Fallas identified someone other than him as the shooter when viewing a photospread. Given that Barker was under the influence and that Fallas picked someone else out of a photospread, Williams asserts that the evidence does not support his convictions.

{¶ 5} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 6} With the foregoing standards in mind, we conclude that Williams' convictions are not against the weight of the evidence. Although Barker had consumed alcohol, smoked marijuana, and not eaten in the hours before the shooting, the jury reasonably could have found his eyewitness identification of Williams to be reliable. Barker testified that Williams was a friend of his whom he had known for about ten years. (Tr. at 146-

147). On the day in question, Barker was walking to meet his girlfriend when he encountered Williams. (*Id.* at 152-155). Barker approached Williams, and the two men engaged in face-to-face conversation. (*Id.* at 156-158). Barker and Williams shook hands as the conversation ended. Barker turned to leave, took two or three steps away, and heard gunshots. (*Id.* at 158-160). He then saw Williams firing a black-handled handgun toward a store across the street. (*Id.* at 161-162). There were "a lot of people" outside the store, and Williams was the only person firing a gun. (*Id.* at 162-163). Barker had "[n]o doubt" that Williams was the shooter. (*Id.* at 166, 202).

{¶ 7} For her part, Fallas testified that she was outside the store when the shooting occurred. (Tr. at 402). She "hit the ground" and saw two people across the street, one of whom was doing the shooting. (*Id.* at 402-405, 408). Fallas described the shooter as being "slender" whereas the person with him was "heavyset." (*Id.* at 403-404, 408). The record reflects that Williams weighed about 150 pounds, whereas Barker weighed around 315 pounds. (*Id.* at 163, 372). Approximately one month after the shooting, Fallas reviewed a photospread and identified someone other than Williams as the person she had seen shooting. (*Id.* at 414-415). The record reflects, however, that Williams and the person Fallas identified in the photospread were nearly the same weight and height. (*Id.* at 416-417). Fallas acknowledged that the two men looked so much alike that they could be brothers. (*Id.* at 416). Even when seeing Williams in person at trial, she had trouble determining which picture in the photospread was his. (*Id.* at 415-416). In addition, Fallas was approximately eighty-eight feet away from the shooter, and she was wearing her reading glasses at the time of the incident, not her "regular glasses." (*Id.* at 375, 417). Fallas conceded at trial that she may have been mistaken in her photo identification. (*Id.*

at 417). A police investigation found no evidence that the person Fallas identified in the photospread had been involved in the shooting. (*Id.* at 373).

{¶ 8} The record also contains evidence that Williams made telephone calls after the shooting in which he essentially admitted his guilt. Marcquietta Hunter testified that she was the girlfriend of Terion Dixon, the victim. (*Id.* at 204). Hunter knew Williams, had gone to school with him, and was able to recognize his voice. (*Id.* at 207-208). The day after the shooting, she was with a friend of hers, Isaiah Tucker, when Tucker received a telephone call from Williams. Tucker put the call on speakerphone, and Hunter overheard the conversation. Specifically, she heard Williams apologize and say that "[i]t wasn't meant for Terion," but was "meant for Dae-Dae." (*Id.* at 208). The next day, Williams called Hunter's phone. After identifying himself, he again apologized and said "[t]hat it wasn't meant for Terion," but was "meant for Dae-Dae." (*Id.*). Tucker also testified about the telephone call he received from Williams. According to Tucker, Williams said that he was sorry, that he had hesitated "to squeeze," and that he had seen Terion Dixon but that did not stop him from "shooting at Dae-Dae." (*Id.* at 248, 253). During their investigation, police obtained Williams' cell phone and confirmed the existence of outgoing calls from his phone to Tucker's phone at the time claimed. (*Id.* at 338-344). Police also investigated Williams' claim that he was out of the area at a particular residence in Trotwood at the time of the shooting. (*Id.* at 357-358). A detective spoke with the individuals Williams claimed to have been with and refuted his claim. (*Id.* at 360). Finally, police discovered during a post-arrest interview of Williams that Davion Clark, who went by the nickname "Dae-Dae," had beaten and robbed Williams several weeks before the shooting. (*Id.* at 360-363).

{¶ 9} Having reviewed the record, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice when it convicted Williams of murder and discharging a firearm on or near prohibited premises. This is not an exceptional case in which the evidence weighs heavily against his convictions. To the contrary, the evidence strongly points to his guilt. Accordingly, the first assignment of error is overruled.

{¶ 10} In his second assignment of error, Williams asserts that he received ineffective assistance of counsel at trial. Specifically, he contends his attorney provided ineffective assistance by failing to object when the State asked the trial court to certify two witnesses as experts in the presence of the jury. Williams does not suggest the witnesses—forensic pathologist Susan Allen and forensic firearm examiner Christopher Monturo—are not experts. We note that the record unquestionably supports that they are both eminently qualified in their respective fields. Rather, he contends they should not have been certified as experts in front of the jury because doing so enhanced their stature and gave the appearance of judicial approval of their testimony.

{¶ 11} Upon review, we find Williams' argument to be unpersuasive. A defendant is deprived of effective assistance of counsel when counsel's performance is deficient and the deficiency prejudices the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The prejudice prong of ineffective assistance of counsel has been equated by the Ohio Supreme Court to the same deferential standard that is required for finding plain error wherein the proponent must demonstrate "that the trial court's error must have affected the outcome of the trial." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, *quoting State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 12} Williams primarily relies on *United States v. Johnson*, 488 F.3d 690 (6th Cir.2007) and cases cited therein for the argument that it was error for the trial court to recognize Dr. Allen and Chris Montouro to be experts in front of the jury. Therefore, he contends, the failure to object constitutes ineffective assistance of counsel. In *Johnson*, based on his training and experience Cincinnati police officer Richard Dews was permitted to testify as an expert that activity that he had observed constituted drug trafficking. The following transpired:

> [Prosecutor] [AUSA]: And, Your Honor, we would ask that the witness be identified as an expert in the identification and behavior of street-level narcotics trafficking.
>
> THE COURT: [Defense counsel]?
>
> [Defense counsel]: No objection, Your Honor.
>
> THE COURT: All right. Officer Dews will be accepted as an expert in the area of street-level narcotics transactions and behaviors that accompany that activity

*Id.*, at 694.

{¶ 13} The custom of tendering a witness as an expert, which by some has been taught as accepted practice, is not without reason. Since 2001 the Ohio Supreme Court has no less than eight times held that the proponent of an expert does not have to formally tender an otherwise-qualified expert witness. But those rulings exist for the very reason that appellants have raised the specter of error precisely because the prosecution did not formally tender a witness as an expert. We also recently considered an argument that ten expert witnesses were not qualified as experts, in part, because they were not formally

tendered as experts. *State v. Hayes,* 2d Dist. Montgomery No. 26379, 2016-Ohio-7241, ¶¶ 113-124. In addition, once prospective qualifications to render opinions are presented, it makes sense to signal that the qualification portion of the testimony is complete to give the opponent the opportunity to request voir dire of the witness on those qualifications before proceeding with their opinions,[2] and to allow the trial court, and the witnesses' proponent, to determine whether the witnesses' opinions will be admissible. The issue, as we perceive it, is more directly related to how a trial court responds to a tender of a witness as an expert.

{¶ 14} Indeed, the *Johnson* decision expressed a preference that the trial court should not designate or certify an expert in the jury's presence. The *Johnson* rationale is that "when a court certifies that a witness is an expert, it lends a note of approval to the witness that inordinately enhances the witness's stature and detracts from the court's neutrality and detachment." *Johnson* at 697. The preferred *Johnson* approach would be "the proponent of the witness should pose qualifying and foundational questions and proceed to elicit opinion testimony. If the opponent objects, the court should rule on the objection, allowing the objector to pose *voir dire* questions to the witness's qualifications if necessary and requested." *Id.* at 698. However, this portion of the *Johnson* decision begins: "We pause here to comment on the procedure used by the trial judge in declaring before the jury that Officer Dews was to be considered an expert." *Id.* at 697. As such, the preferred-procedure discussion in *Johnson* is dicta. The actual holding of *Johnson* is

---

[2] When challenging the qualifications of a witness during trial "the preferred procedure is for a trial court to permit a party challenging an expert witness's qualifications to conduct a voir dire solely on that witness's training and experience." *State v. Hall*, 6th Dist. Erie No. E-98-088, 2000 WL 1061875, *3 (Aug. 4, 2000).

that "[d]espite the procedure used in this case—to which no objection was made—we do not find that plain error occurred."

{¶ 15}  Appellant also cites six cases from other Ohio districts and suggests that "[n]umerous Ohio courts have adopted this [the *Johnson*] rule." We disagree. In *Parma Heights v. Owca*, 2017-Ohio-179, 77 N.E.3d 505 (8th Dist.), the court recognized the preference expressed in *Johnson* but did not adopt it and, like *Johnson,* found no plain error. In *State v. Gaona*, 5th Dist. Licking No. 11-CA-61, 2012-Ohio- 3622, the issue was whether a jury instruction on expert testimony should be given when no specific witness was designated as an expert. The court referred to *Johnson*, but it was not directly applicable to the instruction issue and the decision's preference was not adopted. In *State v. Horton*, 9th Dist. Summit No. 26030, 2012-Ohio-3340, the appellant argued that expert testimony against him should have been excluded because the witness was not declared an expert by the trial court. The court cited *Johnson* only to indicate that if the court had declared the witness an expert, it likely would have bolstered the witness' credibility and the failure to so designate did not prejudice the appellant. That court did not adopt the preference of *Johnson*. In *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, a forensic scientist was declared to be an expert in the presence of the jury, and the appellant raised this as part of an assignment of cumulative error. The decision does not indicate what the court said to "declare" the witness an expert. The appellate court agreed that the witness should have been qualified[3] outside the presence of the jury, but the

---

[3] We believe the court meant that the witness should have been declared or determined or approved by the trial court to be an expert witness outside the presence of the jury. An expert's raw "qualifications", as opposed to a declaration, determination or approval, should obviously be presented before the jury because that is how the jury evaluates the worth or credibility of the witness' opinions. For example, the opinion of a witness who

case holding was that error was harmless because the court was correct in finding the witness qualified to testify. *State v. Monroe*, 8th Dist. Cuyahoga No. 94768, 2011-Ohio-3045 preceded, and was quoted in, *Parma Heights,* to which it is nearly identical. The defense had not objected to the expert's qualifications, the expert was qualified and the appellate court found no plain error. Although reference was made to the *Johnson* preference, the *Johnson* dicta was not adopted. Finally, in *State v. Foster,* 8th Dist. Cuyahoga No. 90870, 2008-Ohio-31, the appellant claimed the trial court erred by declaring a witness an expert in the jury's presence. But when the witness was offered as an expert the trial court only said "yes" and overruled the defense objection. The *Foster* appellate decision reads: "The court did not expressly declare Britton to be an expert, thereby creating the appearance that the court approved the witness. *Cf. United States v. Johnson* (6th Cir.2007), 488 F.3d 690, 697–98." *Id.* at ¶ 34-35. The "*Cf.*" signal was only to compare the *Foster* result with *Johnson.* It was not an adoption of the case. Of all the cited cases, only *Bolton* arguably could be said to have adopted the preference suggested in *Johnson*, and even then the decision rested on harmless error, not the *Johnson* preference.

{¶ 16} In the present case, with respect to the two experts, the following occurred:

[Prosecutor]: Judge, at this point, I would tender Dr. Allen as an expert in the field of forensic pathology.

[Defense counsel]: No objection.

THE COURT: So noted.

---

has a degree, licensure and has been working in their profession for 20 years would likely have more value than that of one who has only 20 weeks experience in the profession to offer.

(Trial Transcript at 124).

> [Prosecutor]: Judge, at this time we'd tender Mr. Monturo as an expert in the field of firearms examination and tool marks.
>
> [Defense counsel]: No objection.
>
> THE COURT: He'll be so designated.

(Trial Transcript at 290).

Only in regard to the second witness could it be said that the trial court "designated" the witness as an expert contrary to the preferred method in the *Johnson* dicta. The court's response for the first witness was similar to that in *Foster,* where the court concluded: "The court did not expressly declare [the witness] to be an expert." *Foster* at ¶ 34. That being so, it could not be ineffective assistance of counsel to fail to object to the qualification procedure for that witness.

{¶ 17} With regard to the above second witness, we reach the same conclusion as the holding in *Johnson*. There is no plain error because no difference in result, or prejudice, is demonstrated. Because we find an absence of prejudice, the failure to object to the designation procedure is not ineffective assistance of counsel under *Strickland*.

{¶ 18} The purpose of Allen's testimony was to establish Dixon's cause of death, a gunshot to the chest, which was undisputed. The only real issue at trial was the identity of the shooter, and Allen did not opine about that. As for Monturo, he testified about his examination of shell casings found at the scene. Once again, this testimony had nothing to do with the identity of the shooter. Given that the expert testimony at issue was largely perfunctory and uncontroversial, we fail to see how Williams was prejudiced even if qualifying of either expert in front of the jury did enhance their stature and credibility. The

second assignment of error is overruled.

{¶ 19} In his third assignment of error, Williams contends the trial court erred in failing to merge his convictions for murder and discharging a firearm on or near prohibited premises as allied offenses of similar import.

{¶ 20} In support of his argument, Williams reasons:

Appellant's conviction for Discharge of Firearm On or Near Prohibited Premises was based upon the shooting that is the basis for the Murder conviction. Appellant discharged the firearm on prohibited premises that caused murder. The two crimes committed caused the same, identifiable harm: the taking of the life of the victim. They were committed at the same time and place and constituted one action. The two crimes also were committed with the same animus due to the fact they were committed together and there was only one person who was shot.

As such, Count 5 should have merged with Count 1 and the additional 8 year sentence should be voided.

(Appellant's brief at 8-9).

{¶ 21} Upon review, we note that Williams did not raise an allied-offense argument below. "An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 143 Ohio St. 3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. "Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the

same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

**{¶ 22}** " 'As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.' "*State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

**{¶ 23}** Williams has failed to demonstrate a reasonable probability that merger is required here. We agree that he committed the offenses of murder and discharging a firearm on or near prohibited premises with the same conduct and the same animus. The record reflects that he fired multiple shots in rapid succession with the singular motivation of killing Davion Clark, who had beaten and robbed him previously. We see no plain error in failing to merge the two offenses, however, because we find no reasonable probability that they were of similar import or significance. The Ohio Supreme Court has recognized that merger is not required if offenses "are not alike in their significance and their resulting harm." *Ruff* at ¶ 21. In addition, where a defendant's conduct places more than one person at risk, that conduct can support multiple convictions because the offenses are of dissimilar import. *Id.* at ¶ 23

**{¶ 24}** Williams was convicted and sentenced on one count of murder for causing

Terion Dixon's death as a proximate result of committing felonious assault. He also was convicted and sentenced on one count of discharging a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), which provides: "No person shall do any of the following: * * * Discharge a firearm upon or over a public road or highway." Notably, "[t]he victim of the offense of discharging a firearm upon or over a public road or highway is the public. This is because it is the act itself that is prohibited. The offense can be completed with no one remotely near the location where the firearm is discharged upon or over the public road or highway. R.C. 2923.162(A)(3) is a statute intended to benefit the public good[.]" *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770 (8th Dist.), ¶ 33; *see also State v. Carzelle*, 8th Dist. Cuyahoga No. 105425, 2018-Ohio-92 (applying *James*). Although Williams actually shot and killed Dixon, his act of firing a handgun across the roadway itself violated the statute, placed numerous people at risk, and harmed the public at large.[4] Conversely, his murder conviction required harm to a particular victim and differed in the significance and the nature of the harm it addressed. At a minimum, we believe the offenses at issue are dissimilar enough to preclude a finding of plain error. Accordingly, the third assignment of error is overruled.

{¶ 25} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

---

[4] Williams' act of shooting Dixon elevated the degree of the offense of discharging a firearm on or near prohibited premises to a first-degree felony. *See* R.C. 2923.162(C)(4). The fact remains, however, that the act of discharging a firearm over a public road or highway itself constituted a violation of the statute. *See* R.C. 2923.162(A)(3).

Copies mailed to:

Mathias H. Heck
Michael J. Scarpelli
Travis Kane
Hon. Richard Skelton